**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| JASMYN WILLIAMS, individually and on behalf of all others similarly situated, | : | |
| | : | |
| | : | |
| Plaintiff, | : | C.A. No. |
| | : | |
| v. | : | CLASS ACTION |
| | : | |
| PROGRESSIVE DIRECT INSURANCE COMPANY, an Ohio corporation, | : | JURY TRIAL DEMANDED |
| | : | |
| | : | |
| Defendant. | : | |

**CLASS ACTION COMPLAINT**

Plaintiff Jasmyn Williams ("Plaintiff"), by and through undersigned counsel, brings this class action, individually and on behalf of all others similarly situated, against Progressive Direct Insurance Company ("Progressive" or "Defendant") and alleges as follows:

**INTRODUCTION**

1.      This is a class action on behalf of Plaintiff and all other similarly situated claimants in Delaware who received a payment for the loss of a totaled vehicle from Defendant, where Defendant used valuation reports prepared by Mitchell International, Inc. ("Mitchell") to determine the actual cash value of the loss vehicles.  Through Mitchell's valuation, Defendant systemically thumbs the scale when calculating the actual cash value ("ACV") of claimants' loss vehicles by applying so-called "Projected Sold Adjustments" that are: (a) deceptive and unexplained; (b) contrary to appraisal standards and methodologies; (c) not based in fact, as they are contrary to the used car industry's market pricing and inventory management practices; (d) not applied by the major competitor of Defendant's vendor Mitchell; and (e) on information and belief, not applied by Defendant and Mitchell to insureds in other states like California.

2.      In the event of a "total loss" to an insured vehicle—i.e., where repair of the vehicle

1

is impossible or uneconomical—Defendant's uniform insurance policies with Plaintiff and all putative Class members (defined below) promises to pay for the loss, limited to the ACV of the vehicle. Attached as Exhibit A is a copy of Plaintiff's Policy ("Policy"), which is materially identical to the policy for all members of the putative Class.

3.      When valuing total loss claims for vehicles, it is improper for an automobile insurance company, such as Progressive, to undervalue and underpay the claims by manipulating the data used to determine the ACV of the vehicles. Specifically, under its insurance policy terms and applicable Delaware law, Defendant has a duty to pay, and represents that it will pay, the ACV of a loss vehicle when adjusting total loss claims. Notwithstanding these obligations and representations, Defendant fails to fulfill this obligation by making improper and unreasonable adjustments to reduce the value of comparable vehicles, which in turn reduces the valuation of the total loss vehicles and the claim payment to the insured/claimant.

4.      Specifically, Defendant, through Mitchell, systemically applies a so-called "Projected Sold Adjustment" that results in a significant downward adjustment to the base values of the comparable vehicles used to calculate the ACV of Plaintiff's and Class members' total loss vehicles. This reduction is contrary to appraisal standards and methodologies and is not based in fact, as it is contrary to the used car industry's market pricing and inventory management practices. The adjustment is applied to each of the comparable vehicles on top of adjustments for differences such as mileage, options, and equipment. The only purported explanation for the downward adjustment appears on the last page of the valuation reports and is a general, nondescript statement claiming that the reduction is to "reflect consumer purchasing behavior (negotiating a different price than the listed price)." Exhibit B at p. 7.

5.      An integral part of Defendant's fraudulent scheme is a provision of the Policy

which requires the parties to submit to an appraisal of the loss if there is a disagreement over the loss. The appraisal provision requires the insured and the insurer to each hire, at their own expense, an appraiser, and to bear equally the expenses of an umpire selected by the two appraisers, as well as any other expenses of the appraisal. Since the amount by which the insureds' total-loss claims are underpaid is likely less (or only marginally greater) than the cost of the appraisal, Defendant knows and intends that the insureds will forego the appraisal process and accept the artificially determined loss-payment for the total-loss claims. As designed by Defendant, the appraisal provision prevents plaintiff and the Class from effectively vindicating their rights under the Policy.

6.    To be clear, this case does not present a dispute about loss—which both Parties agree exceeds ACV, such that the vehicle is a total loss—or even ACV, which Defendant never determines. Rather, this case challenges Defendant's systematic and fraudulent scheme to mis-value insureds' vehicles that are declared a total loss in a manner which does not comport with representations made by Defendant or obligations undertaken by Defendant in its Policies, in order to illegally increase its own profits. This is an issue that cannot be resolved through an appraisal process.

7.    Moreover, the Policy is an unconscionable contract that was unilaterally drafted by Defendant with full knowledge of the unfair scheme it intended to employ to artificially reduce the value of its insured's vehicles, and neither Plaintiff nor the members of the Class had any roll in drafting its terms.

8.    Through Defendant's deceptive, fraudulent, and unfair scheme, Defendant violated the Delaware Consumer Fraud Act, breached its contracts and the covenant of good faith and fair dealing and was unjustly enriched.

9.    As a result of Defendant's deceptive, fraudulent, and unfair scheme, Plaintiff did

not receive the benefit of her bargain, and thus sustained actual damages.

10.    By this action, Plaintiff, individually and on behalf of the Class, seeks damages and injunctive and declaratory relief.

## PARTIES

11.    Plaintiff Jasmyn Williams, at all relevant times, was a Delaware citizen. At all relevant times, Plaintiff was contracted with Progressive for automobile insurance. On or about October 30, 2020, Plaintiff was in a car wreck, and Defendant deemed her vehicle to be a total loss.

12.    Defendant Progressive Direct Insurance Company is an Ohio company with its principal place of business in Ohio. Defendant provides insurance coverage throughout the United States for first-party property damage under collision and/or comprehensivecoverage.

## JURISDICTION AND VENUE

13.    Minimal diversity exists under the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d), 1441(a)-(b), and 1453. Plaintiff and the proposed class members are citizens of the State of Delaware. Defendant is an Ohio Corporation that has its corporate headquarters in Ohio, and, at all relevant times hereto, Defendant was engaged in the business of marketing and selling insurance policies and adjusting insurance claims in the State of Delaware.

14.    Plaintiff estimates that there are more than 100 putative class members, and the aggregate compensatory damages (in the amount of the Projected Sold Adjustment that were deceptively deducted), claimed by Plaintiff and the Class are estimated in good faith to exceed $5,000,000.00.

15.    Venue is proper in this District under 28 U.S.C. § 1391, as a substantial portion of the conduct giving rise to Plaintiff's claims occurred in this District, and Defendant transacts

business in this District.

## FACTUAL ALLEGATIONS

16.     On October 30, 2020, Plaintiff was involved in a car wreck and sustained physical damage to her vehicle.

17.     Like all members of the putative Class, Plaintiff made a property damage claim to Defendant.

18.     Pursuant to the same policies and procedures, Defendant declared Plaintiff's vehicle to be a total loss and purported to offer her the ACV of her loss vehicle, as Defendant promised and represented it would under the uniform provisions of its insurance policies and Delaware law.

19.     When calculating its valuations and claims payments, Defendant systemically employs a routine "total loss settlement process." The process has no material differences relevant to this action, regardless of whether it involves first-party or third-party claimants or which Progressive entities were directly involved in the issuance of the relevant policy. This process involves obtaining a "Vehicle Valuation Report" from Mitchell and then using and relying upon the valuation provided by Mitchell to determine the benefit payment under the policy. Defendant provided a Mitchell Vehicle Valuation Report for Plaintiff on November 18, 2020. See Exhibit B.

20.     The Mitchell Vehicle Valuation Reports used by Defendant during the relevant period followed the same process, provided and disclosed the same or substantially the same material information, and presented that material information in the same or substantially the same format. These valuation reports purport to contain values for comparable vehicles recently sold or for sale in the claimant's geographic area. The reports also contain a purported valuation for the loss vehicle based upon advertisements for comparable vehicles listed in the report. The report

then adjusts the advertised prices of those comparable vehicles to account for differences in equipment, mileage, and vehicle configuration. Exhibit B at p. 7.

21.     In addition, however, the valuation reports used by Defendant make a further adjustment to each loss vehicle called a "Projected Sold Adjustment." For Plaintiff, Projected Sold Adjustments in the amounts of -$516.00, -$459.00, and -$489.00 respectively, were applied to each of the three comparable vehicles. Exhibit B at pp. 4-6.

22.     Defendant provides no data specific to the comparable vehicles or any explanation of industry practices in its valuation reports to support any Projected Sold Adjustment, much less the specific downward adjustments used in Plaintiff's valuation report. Instead, the only explanation is buried on the last page of each report, stating in full: "Projected Sold Adjustment – an adjustment to reflect consumer purchasing behavior (negotiating a different price than the listed price)." Exhibit B at p. 7.

23.     Defendant's Projected Sold Adjustments are deceptive. As part of a deceptive practice to lower the value of property claims, Defendant does not do what it says it will do – pay ACV. Moreover, as described above, Defendant provides no explanation or justification for the Projected Sold Adjustment, much less the specific amount applied, other than the speculation that it "reflect[s] consumer behavior." Exhibit B at p. 7.

24.     In truth, Defendant's Projected Sold Adjustments do not reflect market realities (the context in which "consumer behavior" occurs) and run contrary to customary automobile dealer practices and inventory management, where list prices are priced to reflect the intense competition in the context of internet pricing and comparison shopping. A negotiated price discount would be highly atypical and therefore is not proper to include in determining ACV. The inclusion of this significant downward adjustment purportedly to "reflect consumer purchasing behavior" is

particularly improper in the context of this action—insureds who have suffered a total loss of their vehicle and need to procure a replacement and have limited time to search out the illusory opportunity to obtain the below-market deal Defendant assumes always exists without any explanation or support.

25.     Defendant's Projected Sold Adjustments are contrary to appraisal standards. There are multiple generally-recognized and acceptable methodologies for determining ACV, including use of comparable vehicles. Defendant begins the process of valuing loss vehicles using comparative methodology but improperly deviates from that process by thumbing the scales in favor of Progressive. Defendant documents the loss vehicle's and each comparable vehicle's mileage, options, and trim, which are compared in the report, and make dollar adjustments accordingly. Plaintiff does not challenge these documented adjustments. At this stage of the process, Defendant abandons the comparative methodology and applies adjustments that are contrary to proper appraisal methodologies for determining ACV. Appraisers use advertised prices and only make adjustments based on observed and verifiable data; appraisal standards do not permit arbitrary adjustments from the advertised price based upon undocumented and unverifiable projections.

26.     The impropriety and arbitrariness of Defendant's Projected Sold Adjustments is further demonstrated by the fact that Mitchell's primary competitor in providing valuation reports to insurance companies—CCC Intelligent Solutions—does not apply projected sold adjustments in this manner. Instead, CCC Intelligent Solutions uses list prices.

27.     On information and belief, the impropriety and arbitrariness of Defendant's Projected Sold Adjustments are further demonstrated by the fact that Progressive entities do not apply these adjustments when valuing total losses in California. There is no justification for

applying these adjustments when valuing total losses in Delaware while not subjecting California claimants to the same negative adjustments.

28.     Plaintiff and each member of the class were damaged by Defendant's application of these Projected Sold Adjustments because they were not paid the ACV they would have received had Defendant applied proper methodologies and appraisal standards.

29.     Were it not for this deceptive and improper adjustment, the "Base Value" in each valuation report would have been higher, resulting in a higher "settlement value" and in turn a higher payment by Defendant for ACV.  Specifically, for Plaintiff, were it not for this deceptive and improper adjustment, the payment of ACV by Defendant would have been $488.00 higher,[1] before adding the related increase in payments for applicable sales taxes.

**Defendant's Deceptive and Illegal Fraudulent Scheme**

30.     To be clear, this case does not present a dispute about the amount of loss. Plaintiff does not contest Defendant's determination of the amount of loss, nor that the amount of loss exceeded the vehicle's ACV, such that the vehicle was determined by Defendant to be a total loss, i.e., totaled (uneconomical to repair). Rather, this case challenges Defendant's fraudulent scheme to illegally undervalue insureds' vehicles that are declared a total loss, in order to increase its own profits.

31.     Importantly, Plaintiff does not contest the ***amount*** of the Projected Sold Adjustment. Said another way, it is not that Defendant believes the Policy and Delaware law allow for a 6% Projected Sold Adjustment, while Plaintiff believes only a 3% adjustment is permitted. Rather, Plaintiff alleges that ***no Projected Sold Adjustment is permitted at all*** as a matter of law.

---

[1] $488.00 is the average of the Projected Sold Adjustments applied to each of the three comparable vehicles in Plaintiff's valuation report.

## CLASS ACTION ALLEGATIONS

32.     Plaintiff brings this action individually and as a class action under Fed. R. Civ. P

23(a) and (b), on behalf of the following proposed Class:

> All Delaware citizens insured by Defendant who, from the earliest
> allowable time through the date an Order granting class certification
> is entered, received compensation for the total loss of a covered
> vehicle, where that compensation was based on a valuation report
> prepared by Mitchell and the ACV was decreased based upon
> Projected Sold Adjustments to the comparable vehicles used to
> determine ACV.

33.     Excluded from the Class are Defendant and any of its members, affiliates, parents,

subsidiaries, officers, directors, employees, successors, or assigns; governmental entities; and the

Judge(s) and Court staff assigned to this case and their immediate family members.

34.     Plaintiff reserves her right to amend the Class definition if discovery and further

investigation reveal that any Class should be expanded or narrowed, divided into additional

subclasses, or modified in any other way.

35.     **Numerosity.** The members of the Class are so numerous that individual joinder of

all Class members is impracticable. While Plaintiff is informed and believes that there are

thousands of Class members, the precise number is unknown to Plaintiff but may be ascertained

from Defendant's books and records. Class members may be notified of the pendency of this action

by recognized Court-approved notice dissemination methods, which may include U.S. Mail,

electronic mail, Internet postings, and/or published notice.

36.     **Commonality and Predominance.** This action involves common questions of law

and fact, which predominate over any questions affecting individual Class members, including,

without limitation:

> a.     Whether Defendant systemically used Mitchell's Vehicle Valuation Reports
>
>       in adjusting total loss claims to determine ACV;

b.  Whether the Mitchell Vehicle Valuation Reports included Projected Sold Adjustments to the value of the comparable vehicles that reduced the base value, and thus the claim amount paid by Defendant for the ACV of Plaintiff's and Class members' total loss vehicles;

c.  Whether representing to claimants that the Mitchell valuation equated with the total loss vehicle's ACV was deceptive;

d.  Whether Defendant's deceptive acts and improper practices injured Plaintiff and members of the Class;

e.  Whether Defendant's acts violated its obligations under the policy of insurance;

f.  Whether Plaintiff and the Class are entitled to compensatory damages, and if so, the calculation of damages; and

g.  Whether Plaintiff and members of the Class are entitled to an injunction restraining Progressive's future deceptive acts and practices.

37.  **Typicality.** The claims of the Plaintiff, who is the representative of the Class herein, are typical of the claims of the proposed Class, in that the claims of all members of the proposed Class, including the Plaintiff, depend on a showing of the acts of Progressive giving rise to the right of Plaintiff to the relief sought herein. There is no conflict between the individually named Plaintiff and the other members of the proposed Class with respect to this action, or with respect to the claims for relief set forth herein.

38.  **Adequacy of Representation.** Plaintiff is an adequate representative of the Class because Plaintiff's interests do not conflict with the interests of the other Class members whom she seeks to represent, Plaintiff has retained counsel competent and experienced in complex class

action litigation, including successfully litigating class action cases similar to this one, where insurers breached contracts with insureds. The interests of the Class will be fairly and adequately protected by Plaintiff and her counsel.

39.    **Superiority.** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, such that it would be impracticable for the Class members to individually seek redress for Defendant's wrongful conduct. Even if the Class members could afford litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## COUNT 1
## VIOLATION OF THE DELAWARE CONSUMER FRAUD ACT
### 6 *Del. C.* §§ 2511, *et seq.*

40.    Plaintiff repeats and re-alleges all previously alleged paragraphs as if fully alleged herein.

41.    This Count is brought by the Plaintiff on behalf of the Class.

42.    Defendant is a "person" as engaged in the sale of "merchandise" as defined by 6 *Del. C.* § 2511(6), (7).

43.    The Delaware Consumer Fraud Act ("Delaware CFA"), 6 *Del. C.* §§ 2511, et seq., prohibits the act, use, or employment by any person of any deception, fraud, false pretense, false

promise, misrepresentation, unfair practice, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale, lease, receipt, or advertisement of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby, is an unlawful practice.

44.     As alleged herein, Defendant, through its agents, employees, and/or subsidiaries, violated the Delaware CFA by knowingly and intentionally concealing and failing to disclose material facts regarding its application of an arbitrary Projected Sold Adjustment to comparable vehicles in order to reduce their market value and, as a result, the amount of Defendant's total-loss payments to insureds, as detailed above.

45.     Defendant also failed to comply with Delaware law, which, when insurance companies are determining "fair market value" of insured's vehicles, requires that "adjustment[s] shall be based on the fair market value at the time of loss of a like make, model, condition and equipped automobile[,] and provides that "the adjuster shall be prepared to substantiate his offer with the average quotation from three reputable used car dealer managers in the area of claimant's residence" and that "[t]he only exception would be where the vehicle that is the subject of the claim so singularly unique so that the adjuster must widen the each for comparable vehicles in order to accurately calculate the value of the totaled vehicle." Del. Dept. Ins. Auto Bulletin No. 1, Reissued January 25, 2018.

46.     By knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding its application of an arbitrary Projected Sold Adjustment to comparable vehicles, and Defendant's failure to comply with Delaware law, as detailed above, Defendant engaged in one or more unfair or deceptive business practices prohibited by the Delaware CFA.

47.    Defendant's misrepresentations and omissions regarding its application of an arbitrary Projected Sold Adjustment to comparable vehicles were made to Plaintiff and the Class members in a uniform manner.

48.    Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppression of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Class members, about Defendant's application of an arbitrary Projected Sold Adjustment to comparable vehicles in order to reduce the amount of Defendant's total-loss payments to its insureds.

49.    The facts regarding Defendant's application of an arbitrary Projected Sold Adjustment to comparable vehicles that Defendant knowingly and intentionally misrepresented, omitted, concealed, and/or failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Class members, who consider such facts to be important to their purchase decisions with respect to Defendant's insurance coverage.

50.    Plaintiff and Class members had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had concealed or failed to disclose. Plaintiff and Class members did not, and could not, unravel Defendant's deception on their own.

51.    Defendant had an ongoing duty to Plaintiff and the Class members to refrain from engaging in unfair or deceptive practices under the Delaware CFA in the course of its business. Specifically, Defendant owed Plaintiff and Class members a duty to disclose all the material facts concerning its application of an arbitrary Projected Sold Adjustment to comparable vehicles because Defendant possessed exclusive knowledge of those facts, it intentionally concealed those

facts from Plaintiff and the Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

52.     Plaintiff and the Class members were aggrieved by Defendant's violations of the Delaware CFA because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts regarding its application of an arbitrary Projected Sold Adjustment to comparable vehicles, including that the Projected Sold Adjustment is arbitrarily selected and applied in an inconsistent manner designed to decrease Defendant's total-loss payments under the Policy.

53.     Plaintiff and the Class members purchased Defendant's insurance coverage in reliance on Defendant's misrepresentations, omissions, concealments, and/or failures to disclose material facts regarding its purported payment of ACV in the event of a total loss and Defendant's application of an arbitrary Projected Sold Adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

54.     Had Defendant not engaged in the deceptive acts and practices alleged herein, Plaintiff and Class members would not have purchased insurance coverage from Defendant or would not have paid as much for it and, thus, they did not receive the benefit of the bargain and/or they suffered out-of-pocket loss.

55.     Defendant's violations of the Delaware CFA present a continuing risk of future harm to Plaintiff and the Class members.

56.     Plaintiff and the Class members seek an order enjoining Defendant's unfair and deceptive acts or practices in violation of the Delaware CFA and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Delaware CFA.

## COUNT 2
## BREACH OF CONTRACT

57.     Plaintiff repeats and re-alleges all previously alleged paragraphs, except those allegations made under the preceding Count, as if fully alleged herein.

58.     This Count is brought by the Plaintiff on behalf of the Class.

59.      Plaintiff and each of the other Class members were insured under a policy issued by Defendant, as described herein.

60.     Plaintiff and each of the other Class members made claims under their insurance contracts, which Defendant determined to be first-party total losses under the insurance contract, and additionally determined to be covered claims.

61.     Pursuant to the above-described contractual provisions, upon the total loss of their insured vehicles, Defendant purported to pay Plaintiff and each of the other Class members the ACV of their totaled vehicles.

62.     Defendant, however, failed to pay the ACV of Plaintiff's and Class members' vehicles because Defendant applied an arbitrary and capricious Projected Sold Adjustment to comparable vehicles in order to reduce their market value and, as a result, Defendant's total-loss payments to insureds.

63.     Defendant also failed to comply with Delaware law, which requires that "adjustment[s] shall be based on the fair market value at the time of loss of a like make, model, condition and equipped automobile[,] and provides that "the adjuster shall be prepared to substantiate his offer with the average quotation from three reputable used car dealer managers in the area of claimant's residence" and that "[t]he only exception would be where the vehicle that is the subject of the claim so singularly unique so that the adjuster must widen the each for comparable vehicles in order to accurately calculate the value of the totaled vehicle." Del. Dept.

Ins. Auto Bulletin No. 1, Reissued January 25, 2018.

64.    Thus, Defendant failed to pay Plaintiff and each of the other Class members the promised ACV of their total-loss vehicles and thereby breached its contract with Plaintiff and each of the other Class members.

65.    As a result of such contractual breaches, Plaintiff and each of the other Class members have been damaged and are entitled to recover damages, as well as costs, pre-judgment and post-judgment interest, injunctive relief, and other relief as appropriate.

## COUNT 3
### BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

66.    Plaintiff repeats and re-alleges all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

67.    This Count is brought by the Plaintiff on behalf of the Class.

68.    Every contract, including the Policy, contains an implied covenant of good faith and fair dealing. The purpose of this duty is to ensure that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract.

69.    Disputes involving the exercise of good faith arise when one party is given broad discretion in performing its obligations under the contract. Where a contract specifically vests one of the parties with broad discretion in performing a term of the contract, the covenant of good faith and fair dealing requires that the discretion be exercised reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.

70.    Under the Policy, Defendant had discretion to perform its obligations under the contract, including the obligation to determine the ACV of an insured's total-loss vehicle.

Defendant, however exercised its discretion unreasonably, with an improper motive, and in a manner that was arbitrary, capricious, and inconsistent with the reasonable expectations of the parties, specifically, to arbitrarily reduce the amount of their total-loss payments to insureds, as alleged herein.

71.    Defendant also failed to comply with Delaware law, which requires that "adjustment[s] shall be based on the fair market value at the time of loss of a like make, model, condition and equipped automobile[,] and provides that "the adjuster shall be prepared to substantiate his offer with the average quotation from three reputable used car dealer managers in the area of claimant's residence" and that "[t]he only exception would be where the vehicle that is the subject of the claim so singularly unique so that the adjuster must widen the each for comparable vehicles in order to accurately calculate the value of the totaled vehicle." Del. Dept. Ins. Auto Bulletin No. 1, Reissued January 25, 2018.

72.    As such, Defendant breached the covenant of good faith and fair dealing by, *inter alia*:

    a.  Intentionally applying Projected Sold Adjustments to undervalue comparable vehicles, and, in turn, insureds' total-loss vehicles;

    b.  Failing to pay insureds the ACV of their total-loss vehicles;

    c.  Interpreting the terms and conditions of their insurance policies in an unreasonable manner solely in an effort to understate the value of total-loss vehicles and avoid paying insureds the ACV on their total-loss claims;

    d.  Inventing spurious grounds for undervaluing total loss claims that are hidden, not specific in dollar amount, not adequately explained, and unreasonable.

73.    Defendant's breaches of the covenant of good faith and fair dealing have caused

damages to Plaintiff and the Class. Plaintiff's and the Class members' damages include the amounts improperly deducted by Defendant from its payments to insureds on the basis of a Projected Sold Adjustment.

## COUNT 4
## UNJUST ENRICHMENT

74.    Plaintiff repeats and re-alleges all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

75.    This Count is brought by the Plaintiff on behalf of the Class.

76.    Plaintiff pleads this claim separately as well as in the alternative to her other claims, as without such claims she would have no adequate legal remedy.

77.    Defendant requested and received a monetary benefit at the expense of Plaintiff and Class members in the form of premium payments for automobile insurance coverage.

78.    Defendant misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically Defendant's application of an arbitrary Projected Sold Adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds.

79.    Defendant also failed to comply with Delaware law, which requires that "adjustment[s] shall be based on the fair market value at the time of loss of a like make, model, condition and equipped automobile[,] and provides that "the adjuster shall be prepared to substantiate his offer with the average quotation from three reputable used car dealer managers in the area of claimant's residence" and that "[t]he only exception would be where the vehicle that is the subject of the claim so singularly unique so that the adjuster must widen the each for comparable vehicles in order to accurately calculate the value of the totaled vehicle." Del. Dept.

Ins. Auto Bulletin No. 1, Reissued January 25, 2018.

80.    If Defendant had not misrepresented, omitted, concealed, and/or failed to disclose material facts regarding its purported payment of ACV in the event of a total loss, specifically Defendant's application of an arbitrary Projected Sold Adjustment to comparable vehicles to artificially reduce its total-loss payments to insureds and its failure to comply with Delaware law, Plaintiff and the Class members either would not have purchased insurance through Defendant, or they would have paid less for such insurance coverage.

81.    Accordingly, Defendant was unjustly enriched by the premiums paid by Plaintiff and the Class members to the detriment of Plaintiff and the Class members.

82.    Plaintiff and the Class members are, thus, entitled to restitution and disgorgement in the amount Defendant was unjustly enriched, in an amount to be determined at trial.


**COUNT 5**
**DECLARATORY JUDGMENT**

83.    Plaintiff repeats and re-alleges all previously alleged paragraphs, except those allegations made under the preceding Counts, as if fully alleged herein.

84.    This Count is brought by the Plaintiff on behalf of the Class.

85.    A dispute between Plaintiff and the Class and Defendant is before this Court concerning the construction of the auto insurance policies issued by Defendant, and the rights of Plaintiff and the Class arising under that policy.

86.    Plaintiff, individually and on behalf of the Class, seeks a declaration of rights and liabilities of the parties herein. Specifically, Plaintiff seeks a declaration that in paying total-loss claims by first-party insureds, it is a breach of Defendant's insurance contract, as well as a violation of law, for Defendant to base the valuation and payment of claims on values of comparable

vehicles that have been reduced by arbitrary Projected Sold Adjustments that are (a) arbitrary, (b) contrary to industry practices and consumer experiences (and therefore not reflective of the vehicle's fair market value), and (c) not as reasonably specific or appropriate as to dollar amount.

87.    Defendant's unlawful common policy and general business practice as described herein are ongoing. Accordingly, Defendant has breached, and continues to breach, the express terms of its contracts of insurance with Plaintiff and members of the Class.

88.      As a result of these breaches of contract, Plaintiff and the Class members have been injured.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully seeks judgement in Plaintiff's favor and in favor of the Class as follows:

A.    An Order certifying this action as a Class Action and appointing Plaintiff as Class Representative and Plaintiff's counsel as Class Counsel;

B.    An award of damages (including actual, compensatory, statutory, and punitive, as providedby law) and restitution to Plaintiff and the Class in an amount to be determined at trial, plus pre- and post-judgment interest, in accordance with law;

C.    Disgorgement of Defendant's profits;

D.    Appropriate preliminary and/or final injunctive or equitable relief against the Defendant's conduct as described herein;

E.    An award Plaintiff's and the Class' costs of suit, including reasonable attorneys' fees as provided by law; and

F.     An award such further and additional relief as is necessary to redress the harm caused by Defendant's unlawful conduct and as the Court may deem just and proper under the circumstances.

Dated: April 21, 2022

Of Counsel:*

**SHAMIS & GENTILE, P.A.**
Andrew J. Shamis
14 NE 1st Avenue, Suite 705
Miami, Florida 33132
Telephone: 305-479-2299
ashamis@shamisgentile.com

**EDELSBERG LAW, P.A.**
Scott Edelsberg
Christopher Gold
20900 NE 30th Ave., Suite 417
Aventura, Florida 33180
Telephone: (786) 289-9471
scott@edelsberglaw.com
chris@edelsberglaw.com

* pro hac vice forthcoming

**BAILEY & GLASSER LLP**

 */s/ David A. Felice*
David A. Felice (#4090)
2961 Centerville Road, Suite 302
Wilmington, Delaware 19808
Telephone: (302) 504-6333
dfelice@baileyglasser.com

*Counsel for Plaintiff and the Proposed Class*