**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| **JASMYN WILLIAMS** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 22-510-MAK** |
| | : | |
| **PROGRESSIVE DIRECT** | : | |
| **INSURANCE COMPANY** | : | |

## <u>MEMORANDUM</u>

**KEARNEY, J.**                                                      **September 27, 2022**

Jasmyn Williams challenges her car insurer Progressive Direct Insurance Company's method of calculating her car's value after an accident resulting in it failing to pay her approximately twenty dollars. She alleges Progressive's application of an arbitrary projected sold adjustment calculated by a third party caused this loss and violates Delaware's Consumer Fraud Act. She alleges Progressive's same adjustment also breaches her insurance contract and a covenant of good faith and fair dealing. She lastly asks we declare Progressive's valuation methodology breaches her insurance contract. Progressive moved to dismiss. Counsel provided helpful briefing and oral argument. We understand how the calculation may breach a contract term depending on whether we find Progressive did not consider the market value of Ms. Williams's car by improperly applying the projected sold adjustment. But there is no allegation of concealment or omission in connection with a sale of the insurance contract to Ms. Williams necessary for the consumer fraud claim. We dismiss Ms. Williams's Delaware Consumer Fraud Act claim but will allow her contract claims to go forward. We dismiss her requested declaratory relief as it challenges Progressive's past conduct.

## I.   Alleged facts.

Ms. Williams purchased an auto insurance policy with a $2,000 deductible from Progressive at an unpleaded time.[1] Ms. Williams somehow damaged her car in an October 30, 2020 accident leading her to submit a property claim under the Policy.[2] Progressive declared Ms. Williams's car a total loss.[3] It then offered Ms. Williams the actual cash value of her car calculated by third-party Mitchell International, Inc.[4] Mitchell calculates the amount owed to Progressive's insureds by comparing cars most closely resembling the totaled car and making certain adjustments to the comparable cars including a "projected sold adjustment." Mitchell identified three cars comparable to Ms. Williams's car and then applied a projected sold adjustment deduction to the three comparison cars in the amount of -$516; -$459, and -$489, all approximately 10.3% of their listed sale price.

Progressive calculated the base value (which includes the projected sold adjustment) of Ms. Williams's car at $2,521.42. Progressive then deducted $1,054.46 representing the condition of her car (which she does not contest) and credited her $65 for after-market parts. This math exercise resulted in a market value for Ms. Williams's car of $1,531.96. Because she had a deductible of $2,000, the settlement value for Ms. Williams's claim is zero. She alleges the base value is approximately $488 too low (because of the improperly applied projected sold adjustment) and if $488 is added back to the market value, less her deductible, Progressive owes her approximately $20.

## II.   Ms. Williams's Policy.

Progressive and Ms. Williams agreed Progressive covers "sudden, direct and accidental loss to a … covered auto… resulting from collision."[5] The Policy limits Progressive's "liability for loss to a covered auto …. [to] the lowest of:" a. "the ***actual cash value*** of the … damaged

property at the time of the loss reduced by the applicable deductible;" b. the amount to replace the damaged property; c. the amount to repair the damaged property; or d. the "Stated Amount" on the Policy's declarations page.[6]

The issue here is how Progressive determines the "actual cash value" of Ms. Williams's car deemed a total loss by Progressive. In defining Progressive's limits of liability, the Policy provides Progressive's method to determine "actual cash value": "The actual cash value is determined by the market value, age, and condition of the vehicle at the time the loss occurs."[7]

Progressive explains the process it uses to settle claims: "We may use estimating, appraisal, or injury evaluation systems to assist us in adjusting claims under this policy and to assist us in determining the amount of damages, expenses, or loss payable under this policy. Such systems may be developed by us or a third party and may include computer software, databases, and specialized technology. If any provision of this policy fails to conform to the statutes of the state listed on your application as your residence, the provision shall be deemed amended to conform to such statutes. All other provisions shall be given full force and effect. Any disputes as to the coverages provided or the provisions of this policy shall be governed by the law of the state listed on your application as your residence."[8] Progressive offers no further explanation regarding this process used to settle claims in the Policy.

## III.  Progressive used Mitchell's methodology to set an actual cash value of the total loss.

Progressive uses a "Vehicle Valuation Report" prepared by Mitchell to determine the actual cash value of the total loss car.[9] One of the "adjustments" made to the base value of a damaged car is the "projected sold adjustment."

Mitchell employs a five-step methodology to determine a car's value. At step one, Mitchell locates "comparable vehicles" described as "vehicles that are the closest match to the loss vehicle

in the same market area."[10] Mitchell uses "consumer-based vehicle sources" to locate cars comparable to the total loss car such as inventory from dealerships and, where available, sold car records from sources like J.D. Powers.[11]

At the second step, Mitchell makes adjudgments to the prices of the comparable cars. There are four types of "comparable vehicle adjustments:" projected sold adjustment; vehicle configuration adjustment; mileage adjustment; and equipment adjustment. The projected sold adjustment is defined by Mitchell's Vehicle Valuation Report as "an adjustment to reflect consumer purchasing behavior (negotiating a different price than the listed price)."[12] The application of the projected sold adjustment is at the heart of this litigation. Mitchell's vehicle valuation methodology describes projected sold adjustment as an adjustment "to reflect consumer purchasing behavior" such as negotiating with a seller or dealer for a price "different" from the "listed price" – presumably, a lower price.

At the third step, Mitchell calculates the "base value" of the car by averaging the "adjusted" prices of the comparable cars.[13] The base value is one of the two numbers used to calculate actual cash value.

At the fourth step, Mitchell makes "loss vehicle adjustments" to the car as it existed before the loss. There are four types of "loss vehicle adjustments" applied to the car's pre-loss condition: "condition adjustment" accounting for the pre-loss condition of the car; "prior damage adjustment" accounting for any pre-loss damage to the car; "aftermarket part adjustment" accounting for any after-market parts on the loss car before the accident; and "refurbishment adjustment" accounting for any pre-loss refurbishments to the car.

At the fifth step, Mitchell subtracts the "loss vehicle adjustments" determined in step four from the base value determined in step three to reach the market value of the total loss car.

4

## IV.  Analysis

Ms. Williams challenges Progressive's application of projected sold adjustment to the calculation of comparable cars forming the "base vehicle value." Ms. Williams alleges the application of the projected sold adjustment lowered the "base value" of her car used to determine its actual market value (base value – loss vehicle adjustments = market value). Ms. Williams alleges there are more than 100 putative class members in Delaware damaged by the application of the projected sold adjustment to their total loss car claims and estimates damages exceed $5 million.[14] She claims a violation of Delaware's Consumer Fraud Act, breach of contract, breach of the covenant of good faith and fair dealing, and seeks declaratory judgment.

Progressive moves to dismiss Ms. Williams's claims arguing:

A.  she fails to state a claim under Delaware's Consumer Fraud Act because (a) there are no allegations of conduct falling within the scope of the Act, and (b) even if she could properly invoke the Act, she fails to plead knowing and intentional conduct to support a fraud claim with sufficient particularity under Rule 9(b) and her reliance on Delaware's Insurance Commissioner's  "Bulletin" defining "fair market value" is not applicable because it pertains to the Commissioner's interpretation of Delaware's Unfair Trade Practices Act (and not the Consumer Fraud Act) which has no private right of action;

B.  she fails to state a claim for breach of contract because she does not plead – and cannot plead – any provision of the Policy obligating Progressive to pay the actual cash value of the total loss car;

C.  the breach of the covenant of good faith and fair dealing claim is duplicative of the breach of contract claim and does not apply to conduct covered by an express contract; and,

D.  the court lacks subject matter jurisdiction over her claim for declaratory relief because she seeks relief based on past harm and does not have standing and, even if she did have standing, her declaratory judgment claim is duplicative of her breach of contract claim.

Ms. Williams responds she sufficiently pleads her claims under the Rule 12(b)(6) standard and Progressive is "cooking the books" by "asserting something to its insureds" that is false and it

knows is false.[15] She concedes if Progressive calculated the market value by taking the average price of comparable cars adjusted for differences between the comparable cars and the insured car in mileage, condition, and equipment, she would have no claim because these are proper factors to consider under the Policy and Delaware law.[16] But Progressive goes farther and applies a knowingly false projected sold adjustment reducing the actual cash market value of the total loss car. Ms. Williams alleges this conduct constitutes fraud under Delaware's Consumer Fraud Act.

### A.  We dismiss the Delaware Consumer Fraud Act claim.

Delaware's General Assembly defines an unlawful fraudulent practice through: "The act, use, or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, ***in connection with the sale, lease, receipt, or advertisement of any merchandise***, whether or not any person has in fact been misled, deceived, or damaged thereby…." [17] Delaware's General Assembly defined the purpose and construction of its Consumer Fraud Act: "The purpose of this subchapter shall be to protect consumers and legitimate business enterprises from unfair or deceptive merchandising practices in the conduct of any trade or commerce in part or wholly within this State. It is the intent of the General Assembly that such practices be swiftly stopped and that this subchapter shall be liberally construed and applied to promote its underlying purposes and policies."[18]

The Act "makes it easier to establish a claim for consumer fraud than common law fraud" in three ways: (1) a negligent misrepresentation is sufficient to violate the statute; (2) an unlawful practice is committed regardless of actual reliance by the plaintiff;  and (3) the Act does not require proof of intent to induce action or inaction by the plaintiff.[19] A negligent misrepresentation is sufficient under the Act, meaning the "defendant need not have intended to misrepresent or to

make a deceptive or untrue statement. Instead, the only intent requirement of the Act is that in omitting or concealing a material fact, the defendant must have intended that others rely on the omission or concealment."[20] Claims under the Act must still be pleaded with particularity under Rule 9(b).[21]

Ms. Williams alleges the project sold adjustment is deceptive and does not reflect current "market realities" of consumer behavior.[22] She claims before the age of internet car advertising and shopping, car buyers went to their local used car dealerships where an advertised price appeared on a car window and the consumer would negotiate a price down from the advertised price. She alleges consumers could not then compare prices of cars offered by competitors now readily available on the internet. She alleges the "go to the dealer and let's make a deal" is no longer how the car market operates because today's consumers use the internet to shop and compare prices. She alleges used car sellers now use sophisticated pricing software to account for advertised prices from all competitors and other factors to advertise a more competitive price and the competitive price is not used as a starting point from which to negotiate a lower purchase price.[23]

Ms. Williams alleges the projected sold adjustment is a downward adjustment – ostensibly to reflect "consumer purchasing behavior" – but is no longer the reality of car buying.[24] Ms. Williams alleges Progressive's application of the projected sold adjustment is part of a deceptive practice to lower the actual cash value of a total loss car it is required to pay under the Policy. She alleges Progressive "thumbs the scale by discarding vast amounts of relevant data that contradict any application of a [p]rojected [s]old [a]djustment and by failing to control for material variables, including whether there were ancillary purchases or transactions that may influence what is recorded as the 'sales price' but do not influence the [actual cash value] (e.g. whether the customer

traded in a vehicle at the time of purchase, bought an extended warranty or service plan, or financed the purchase)."[25] Ms. Williams alleges Progressive, at least until July 2021, excluded from the calculation of projected sold adjustment all transactions where the list price of a car equaled the sold price and, after July 2021, continued to exclude such transactions.[26] She alleges Progressive excludes and continues to exclude from the projected sold adjustment all transactions where the sold price of a car exceeds its list price and it does not attempt to verify for transactions where the advertised price exceeds the sold price, whether the reason for the reduction in price is because of a negotiation of the price, or some other "far more likely" reason such as certain discounts unavailable to the general public like employee and military discounts and cash purchases versus financing deals.[27]

Progressive moves to dismiss the Consumer Fraud Act claim based on two arguments. First, Ms. Williams does not plead conduct falling within the scope of the Act, specifically, there are no allegations of a misrepresentation or omission "in connection with the sale, lease, receipt, or advertisement" of the Policy. And, second, even if Ms. Williams could properly invoke the Act, her fraud theories are not actionable and not pleaded with particularity as required by Rule 9(b).

We dismiss Ms. Williams's Consumer Fraud Act claim finding there are no allegations within the language of the Act.[28]

Ms. Williams does not allege a misrepresentation or omission made by Progressive in the sale of the Policy to her regarding the projected sold adjustment. She did not do so after two attempts at pleading. She instead concedes: "[t]here is no precedent on whether the allegations state a viable claim for violation of the [Delaware Consumer Fraud Act], and [Ms. Williams] is willing to concede that question is subject to reasonable debate. …"[29] And in oral argument, Ms. Williams conceded the dismissal of her Consumer Fraud Act claim is a "close call."[30]

But Ms. Williams contends claims relating to the unreasonable construction of a policy by an insurer fall within the scope of the Act. Ms. Williams explained her theory of actionable conduct under the Act: the method by which Progressive adjusts a total loss claim by using the arbitrary projected sold adjustment is evidence of fraud where the insured is told Progressive will insure her car up to its actual cash value. But there is no allegation Progressive made this representation or an omission when Ms. Williams purchased the Policy.

Ms. Williams cites Judge Farnan's reasoning in two opinions from fifteen years ago, *Johnson v. Geico Casualty Company*[31] and *Homsey v. Vigilant Insurance Company*[32] to support her theory the adjustment of a claim and the construction of an insurance policy can demonstrate a colorable misrepresentation or other violation of the Act. In *Johnson*, two insureds alleged Geico wrongly denied them personal injury protection benefits under their policies without obtaining independent medical or expert opinions to justify their decision and delayed or denied full payment of personal injury protection benefits without a reasonable basis and failed to pay the benefits within the statutory period.[33] The insureds sued under the Delaware Consumer Fraud Act and common law contract claims. Geico moved to dismiss the complaint, arguing the Act applies only to merchandising practices and not claims handling.[34] Judge Farnan found the allegations sufficient to withstand dismissal. He allowed allegations regarding the manner in which Geico processed the insureds' claims to go forward under the Act and noted the insureds "made allegations related to the sale and merchandising of the insurance contracts, including that [they] were induced into purchasing these contracts by the alleged misrepresentations."[35]

In *Homsey*, the insureds sued under a policy providing coverage for personally liability relating to credit card, forgery, and counterfeiting.[36] The insureds' former daughter-in-law forged checks from their checking account and stole their credit card resulting in nearly $40,000 in losses.

9

The policy language provided: "We cover a covered person's legal obligation, up to a total of $10,000 for … loss cause[d] by forgery or alteration of *any* check or negotiable instrument."[37] The insurer covered the loss but only up to $10,000, contending it represents the maximum payment for credit cards, forgery, and counterfeiting coverage under the policy.[38]

The insureds argued the insurer unreasonably construed the policy's language to minimize its payment under the policy. The insureds argued the policy language referring to coverage up to $10,000 caused by "forgery or alteration of *any* check" means any one check and the insurer's construction allowing for one single payment of $10,000 for an aggregate group of multiple checks is unreasonable and contrary to the word "any." The insureds sued the insurer for declaratory judgment the policy requires payment up to a total of $10,000 for each forged check, breach of contract, bad faith breach of contract, and consumer fraud under the Act.

The insurer moved to dismiss, arguing the insureds failed to plead their consumer fraud claim under the Act with particularity. Judge Farnan denied the motion to dismiss. He found the insureds sufficiently pleaded conduct under the scope of the Act within the meaning of Rule 9(b) and successfully pleaded a breach of contract and the covenant of good faith and fair dealing. Judge Farnan concluded, without analysis, the allegations supporting the contract claims are sufficient to plead a claim under the Consumer Fraud Act.[39]

Progressive argues *Johnson* and *Homsey* are distinguishable on their facts.[40] Progressive contends *Johnson* and *Homsey* are distinguishable because in *Johnson* the insureds alleged the insurer induced them into purchasing the insurance policies through alleged misrepresentations and in *Homsey* the insureds alleged the insurer "created a condition of falsity in the promises it made in the course of the Policy's sale."[41] Unlike the insured in *Johnson* and *Homsey*, Ms. Williams does not allege a misrepresentation or omission in connection with the sale of the Policy.

Progressive also urges us to follow two more recent decisions dismissing Consumer Fraud Act claims against insurers where the insured fails to allege conduct in connection with the sale of the insurance policy.[42]

We do not read *Johnson* and *Homsey* as broadly as Ms. Williams. First, Ms. Williams does not provide us, and we cannot find, subsequent authority applying *Johnson* and *Homsey* to allow a Consumer Fraud Act claim to go forward without an allegation of a falsity, misrepresentation or omission at the time of the sale. The more recent analysis is to the contrary as cases after *Johnson* and *Homsey* require pleading conduct at the time of sale to be actionable under the Act.

For example, in *Price v. State Farm Mutual Automobile Insurance Company*, the Delaware Supreme Court affirmed, without opinion, the Delaware Superior Court's finding the Act applies to deceptive conduct in connection with the ***purchase*** of insurance.[43] The Superior Court held the Act "protects consumers who are deceived while purchasing merchandise; it does not protect customers who have purchased merchandise and are seeking to receive a benefit of that purchase."[44] Decisions from this District and the Delaware Superior Court after *Price* apply its holding to preclude claims under the Act for alleged falsities, misrepresentations, or omissions not connected with the sale or advertisement of insurance policies.

By way of example, in *Christiana Care Health Services, Inc. v. PMSLIC Insurance Company*, Judge Andrews dismissed claims against an insurer under the Act.[45] The insurer provided medical liability insurance to a physician and, under the terms of the policy, provided defense coverage for claims made against the physician and for payment of any settlement or judgment up to a $1 million limit per occurrence or claim.[46] Patients in an underlying medical malpractice action made a demand of more than $1 million and the parties agreed to settle, but the insurer refused to tender the policy's claim limit in settlement. The action did not settle and went

to trial where a jury awarded the patients in excess of $3 million. The hospital, under an assignment from the physician, sued the insurer under the Act arguing at the time the insurer sold the policy, it promised to make reasonable efforts consistent with the physician's interests to settle medical malpractice negligence claims on the physician's behalf.[47]

Judge Andrews dismissed the claim under the Act finding the complaint failed to allege "at the time of the sale, [insurer] concealed, suppressed, or failed to disclose information or otherwise created a condition of falsity in [its] promise to make reasonable efforts to settle" claims of medical negligence on the physician's behalf and instead alleged the insurer "created a condition of falsity years after the sale by failing to tender payment in settlement" of the underlying medical malpractice action.[48] Judge Andrews further found "[n]ot only does the complaint not allege that the condition of falsity and the sale of the policy were contemporaneous, but it also does not allege any other connection between the condition of falsity and the sale," failing to state a legally cognizable claim for relief.[49]

In *Benson*, an employee submitted a workers' compensation claim to his employer's insurer after suffering injury on the job. The insurer denied the claim finding the employee did not suffer injury within the scope of his employment.[50] The Delaware Industrial Accident Board rejected the insurer's argument and awarded workers' compensation benefits. The employee then sued the insurer challenging the handling of his workers' compensation claim, including a claim the insurer violated the Consumer Fraud Act by breaching the promise of good faith and fair dealing in handling the claim.[51] Judge Stark found the insured failed to allege the insurer's conduct occurred as part of the sale, lease, or advertisement of the insurance policy and granted the insurer's motion to dismiss the claim under the Act.[52]

Judge Wharton of the Delaware Superior Court also found no claim under the Act when the insured could not establish misleading or deceptive conduct in connection with the sale of insurance.[53] A trustee purchased a life insurance policy to insure the life of the trustee's mother. After purchasing the policy, the insurer issued periodic "illustrations" showing the value of the death benefit at specific age intervals including a death benefit of $4 million available at age 100 and beyond age 100.[54] The trust contended the policy provided for a $4 million death benefit without age limitation and conferred a benefit on the trust to surrender the policy for $4 million after the age 100 without waiting for the insured's death.[55] The insurer contended the policy's surrender value amounted to only $336,000. The trust sued the insurer arguing, in part, the post-sale illustrations regarding the death benefit were misleading and made to induce the trust to make additional premium payments.[56] Judge Wharton, on summary judgment, found the claim under the Act failed because the alleged misleading illustrations occurred after the sale of the policy, rejecting the trust's argument each illustration and each additional premium payment constituted a "sale" in connection with the sale of the policy.[57]

We are persuaded by the recent authority requiring an insured to plead the actionable conduct in connection with the sale of the policy. Ms. Williams has now twice offered no allegations regarding how Progressive at the time of the sale of the Policy failed to disclose or omitted the application of the projected sold adjustment to determining the actual cash value of a total loss car. She instead alleges in conclusory fashion without supporting facts: Progressive knowingly and intentionally misrepresented or failed to disclose application of the projected sold adjustment to comparable cars as material to the purchase decisions of her and the class;[58] she purchased Progressive's policy in reliance on its misrepresentations, omissions, concealments, and/or failure to disclose the application of the projected sold adjustment;[59] and, but for

Progressive's deception, Ms. Williams would not have purchased the Policy.[60]  Ms. Williams fails to allege facts Progressive's conduct occurred as part of the sale, lease, or advertisement of the insurance policy.

We dismiss Ms. Williams's claim under the Act.

**B.  We deny Progressive's motion to dismiss the breach of contract claim.**

Progressive next moves to dismiss the breach of contract claim. [61] Ms. Williams alleges she did not receive the benefit of her bargain with Progressive in the amount of the difference between what she believes to be the correct actual cash value and Progressive's improper calculation of market value, a difference of approximately $488.[62] We are not persuaded to dismiss the breach of contract at this preliminary stage subject to discovery.

Ms. Williams must plead the elements of a breach of contract claim: (1) the existence of a contract, express or implied; (2) breach of an obligation imposed by the contract; and (3) damages.[63] Progressive argues we must dismiss the breach of contract claim because Ms. Williams fails to allege, and cannot allege, a Policy provision obligating it to pay the actual cash value of her total loss car.

Progressive agreed to pay for "sudden, direct and accidental ***loss*** to a … covered auto … resulting from collision."[64] The Policy limits Progressive's liability for loss to a covered auto to the lowest of: the actual cash value; the replacement cost; the repair cost, or the state amount shown on the declarations page.[65] Progressive reads the Policy as obligating it to pay for Ms. Williams's "loss" up to the limits of liability and nothing in the Policy requires it to calculate the actual cash value in the way she believes to be correct; a calculation without the application of the projected sold adjustment. In fact, Progressive argues, the Policy allows for it to "use estimating, appraisal, or injury evaluation systems to assist us in adjusting claims under this policy and to assist us in

14

determining the amount of damages, expenses, or loss payable under this policy" including estimating or evaluation systems developed by a third-party.[66]

Progressive argues Ms. Williams does not allege it failed to pay for the "loss" to her car, rather she pleads it failed to pay the actual cash value which is only a limit of its liability to pay on the loss. Progressive further argues Ms. Williams did not allege the amount it paid for her total loss car or the amount she believes it should have paid for the value of her total loss car and does not allege how she is damaged. At oral argument, Progressive argued there is a range of acceptable actual cash value and Ms. Williams did not allege the value of her car fell between "X and Y, and Progressive paid outside of X and Y."[67]

Ms. Williams disagrees. She argues the obligation Progressive owes to her is the actual cash value and she sufficiently alleges Progressive failed to pay the actual cash value when it applied the arbitrary projected sold adjustment. At oral argument, Ms. Williams pointed us to paragraph 46 of her amended Complaint as the pleaded damages caused by the alleged breach. Paragraph 46 alleges if not for the application of the projected sold adjustment, the base value of her total loss car would have been higher resulting in a higher settlement value which in turn would have resulted in a higher actual cash value Progressive is obligated to pay her under the Policy.[68] And specifically as to Ms. Williams, the application of the projected sold adjustment reduced the base value of her car by $488.[69]

Ms. Williams urges us to follow a recent decision from the United States Court of Appeals for the Eighth Circuit addressing a motion to dismiss the plaintiff's complaint against his insurer for applying a projected sold adjustment.[70] There, Mr. Smith sued his insurer Southern Farm Bureau alleging it undervalued his total loss pickup truck by applying Mitchell's projected sold

adjustment, lowering each comparable car's value by 9% of the listed price.[71] Judge Wilson dismissed his complaint. The Court of Appeals reversed dismissal of the breach of contract claim.

The Court of Appeals reasoned the policy required Farm Bureau to pay the "actual cash value" of Mr. Smith's total loss pickup truck based on "consideration of [the truck's] fair market value, age, and condition ... at the time of loss ..."[72] The court found Mr. Smith's allegations: Farm Bureau breached its duty to consider the truck's fair market value by basing its valuation on the arbitrary projected sold adjustment; alleged a reduction of the value of the used car which is neither typical nor reflective of market realities; and alleged car dealers' actual practice does not inflate prices above market value because of competition in internet pricing and comparison shopping states a claim for breach of contract.[73] Accepting these allegations as true, the Court of Appeals concluded Farm Bureau did not consider the truck's fair market value and instead considered an artificially lower value breaching its contractual duty to Mr. Smith.[74]

Ms. Williams also urges us to follow an August 15, 2022 decision from Chief Judge Batten challenging the same insurer conduct.[75] Insured Keddrick Brown sued Progressive challenging its method of arriving at the projected sold adjustment to his total loss car. Mr. Brown alleged the application of the projected sold adjustment is a breach of the insurance contract and contrary to Georgia state regulations. Progressive moved to dismiss the breach of contract claim and breach of the duty of good faith and fair dealing claim. The policy at issue appears to be identical to Ms. Williams's policy regarding actual cash value and its definition as "determined by the market value, age, and condition of the vehicle at the time the loss occurs."[76] Progressive made substantially the same argument in *Brown* as it does here; the liability limitation does not obligate it to pay any particular sum but only sets the outer boundary on its liability. Chief Judge Batten found Mr. Brown's allegation Progressive used the projected sold adjustment to reduce the value

of comparable cars "at least plausibly conflicts with the policy's definition of 'actual cash value,' which includes just 'market value, age, and condition of the vehicle'" and stated a claim for breach of contract, dismissing Progressive's motion.[77]

Progressive seeks to distinguish *Smith* and *Brown*. It argues, unlike Ms. Williams, Mr. Smith alleged Farm Bureau valued his total loss claim at a specific amount and paid him that amount.[78] Progressive contends Ms. Williams is unlike Mr. Smith because she does not allege "whether or how much she was paid or what she believes the [actual cash value] of her vehicle was at the time of the loss based on its market value, age, and condition."[79] Progressive argues Ms. Williams's allegation her car's actual cash value is $488 higher does not appear in the amended Complaint and, even if it did it does not establish Progressive actually paid her less than what she is owed under the Policy. At oral argument, Progressive similarly argued *Brown* is distinguishable because we have a different issue here which, again, is "a failure to allege injury and damages because [Ms. Williams] [has] not alleged what was, in fact, the value of the vehicle so you can compare it and decide if there has been any injury, or what was the loss that amount, despite what [Ms. Williams] suffered in defense of what would she have gotten from the insurance claim but for the alleged" improper projected sold adjustment.[80]

We disagree *Smith* and *Brown* are distinguishable at this stage of the proceeding. Ms. Williams need only allege a contract, breach of an obligation imposed by the contract, and damages. Paragraph 46 of her amended Complaint, as she repeatedly cited during oral argument, alleges the breach of the obligation and damage. The courts in *Smith* and *Brown* recognize allegations the application of the projected sold adjustment to reduce the value of comparable cars, which in turn reduces the base value used to calculate the market value of the total loss car

17

plausibly states a claim for breach of contract. We deny Progressive's motion to dismiss the breach of contract claim.

### C. We deny Progressive's motion to dismiss the breach of the covenant of good faith and fair dealing claim.

Progressive moves to dismiss Ms. Williams's claim for the breach of the covenant of good faith and fair dealing because the claim cannot be based on an express contract. To state a claim for breach of the implied covenant of good faith and fair dealing under Delaware law, a plaintiff must allege: "(1) a specific implied contractual obligation; (2) a breach of that obligation; and (3) resulting damage."[81] "[A] breach of the implied covenant claim cannot be based on conduct that the contract expressly addresses" and cannot be used to "create a free-floating duty ... unattached to the underlying legal document."[82] Under Delaware law, the breach of the implied covenant is "invoked only 'when the contract is truly silent with respect to the matter at hand, and ... when ... the expectations of the parties were so fundamental that it is clear that they did not feel a need to negotiate about them.'"[83]

Progressive argues we must dismiss the claim because it is duplicative of the breach of contract claim. It also argues we should reject Ms. Williams's attempt to imply terms into the Policy, specifically an allegation Progressive failed to conduct an investigation, study, or research into the projected sold adjustment as alleged in paragraph 87.b. of the amended Complaint.

Ms. Williams responds the duty of good faith and fair dealing is implied in every contract and requires Progressive to exercise its discretionary right in a reasonable manner. She points to the Policy language providing "actual cash value is determined by the market value, age, and condition of the vehicle at the time the loss occurs" and, to the extent this gives Progressive some discretion in calculating actual cash value it exercised that discretion unreasonably and

capriciously by applying the projected sold adjustment. And, she argues, she alleges Progressive knows the projected sold adjustment is false. Rule 8(d) allows pleading in the alternative.

Ms. Williams sufficiently pleads an alternative theory for her claim of contract damages. We allow Ms. Williams's covenant of good faith and fair dealing claim to go forward.[84]

### D.  We dismiss Ms. Williams's claim for declaratory relief.

Ms. Williams seeks a declaration "in paying total-loss claims by first-party insureds, it is a breach of [Progressive's] insurance contract, as well as a violation of law, for [Progressive] to base the valuation and payment of claims on values of comparable cars that have been reduced by [p]rojected [s]old [a]djustments that are (a) arbitrary and capricious, (b) contrary to industry practices and consumer experiences (and therefore not reflective of the vehicle's fair market value), and/or (c) not reasonably specific or appropriate as to dollar amount."[85]

Progressive moves to dismiss Ms. Williams's claim for declaratory relief for two reasons: (1) Ms. Williams lacks standing; and (2) even if she has standing, she fails to state a claim because the declaratory relief she seeks is duplicative of the breach of contract claim.

Less than two weeks ago, our Court of Appeals reminded us of a plaintiff's standing requirements.[86] "[A] plaintiff must demonstrate standing separately for each form of relief sought."[87] A plaintiff seeking retrospective, or "backward-looking," relief in the form of money damages demonstrates standing through evidence of past injury.[88] A plaintiff seeking *prospective*, or "forward-looking," relief through a declaratory judgment must show she is "likely to suffer *future* injury" which must also be "imminent," meaning "'certainly impending' rather than just merely 'possible.'"[89]

Ms. Williams does not plead prospective relief. She nevertheless argues her requested declaratory relief is prospective in nature "seeking a declaration that any future applications of the

[projected sold adjustment] violate the terms of the Policy …"[90] But her amended Complaint does not allege prospective declaratory relief. The relief she pleads is a declaration "that in paying total-loss claims … it is a breach of [Progressive's] [Policy] … for [Progressive] to base the valuation and payment of claims on values of comparable vehicles that have been reduced" by the projected sold adjustments.[91] Progressive already adjusted Ms. Williams's claim; she does not agree with the way Progressive adjusted the claim. She seeks "backward-looking" relief, not "forward-looking" relief from a "future injury." Ms. Williams lacks standing to seek declaratory relief. Ms. Williams challenges Progressive's past conduct; the application of the projected sold adjustment to the determination of the actual cash value.

Ms. Williams's claim for declaratory relief is duplicative of her contract claims as it relates to her adjusted claim and request for relief from conduct long over. We dismiss the declaratory judgment request.[92]

## V.   Conclusion

We grant Progressive's motion in part to dismiss Ms. Williams's claim under Delaware's Consumer Fraud Act and her claim for declaratory relief. We deny Progressive's motion on the alternative contract claims and will allow the breach of contract and breach of the covenant of good faith and fair dealing to proceed.

---

[1] D.I. 11 ¶ 12.

[2] *Id.* ¶¶ 12, 17–18.

[3] *Id.* ¶ 12.

[4] Ms. Williams did not sue Mitchell International, Inc.

[5] D.I. 11–2, Policy at 19.

[6] *Id.*, Policy, Limits of Liability, §1 at 23 (emphasis added).

[7] *Id.*, Policy, Limits of Liability, § 2.g. at 24.

[8] *Id.*, Policy, Settlement of Claims at 29–30.

[9] D.I. 11 ¶¶ 1,5, 20–21.

[10] D.I. 11–3, Mitchell Vehicle Valuation Report at 7.

[11] *Id.*

[12] *Id.*

[13] *Id.*

[14] D.I. 11 ¶ 15.

[15] D.I. 22 at 1.

[16] *Id.*

[17] 6 Del. C. § 2513(a) (emphasis added).

[18] *Id.* § 2512.

[19] *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983); *Washington v. William H. Porter, Inc.*, 2017 WL 3098210, at *5 (Del. Super. Ct. July 20, 2017); *Eames v. Nationwide Mut. Ins. Co.*, 412 F.Supp.2d 431, 437 (D. Del.2006).

[20] *Stephenson*, 462 A.2d at 1074.

[21] *Homsey v. Vigilant Ins. Co.*, 496 F. Supp. 2d 433, 438–39 (D. Del. 2007).

[22] D.I. 11 ¶ 25.

[23] *Id.* ¶¶ 25–30.

[24] *Id.*

[25] *Id.* ¶ 31.

[26] *Id.* ¶ 32.

[27] *Id.* ¶¶ 34, 38–42.

[28] We need not address Progressive's alternative arguments regarding pleading fraud with particularity under Rule 9(b) and its response to Ms. Williams's argument the Delaware Insurance Commissioner's Bulletin addressing "unfair settlement offers for totaled vehicles" under Delaware's Unfair Trade Practices Act demonstrates fraud within the meaning of the Consumer Fraud Act.

[29] D.I. 22 at 4, n. 1.

[30] D.I. 31 at 24.

[31] 516 F. Supp. 2d 351 (D. Del. 2007).

[32] 496 F. Supp. 2d 433 (D. Del. 2007).

[33] *Johnson*, 516 F. Supp. 2d at 354.

[34] *Id.* at 359.

[35] *Id.* at 359–60.

[36] *Homsey*, 496 F. Supp. 2d at 435.

[37] *Id.* (emphasis added).

[38] *Id.*

[39] *Id.* at 439–40.

[40] D.I. 24 at 3–4. Unlike the insured in *Johnson* and *Homsey*, Ms. Williams does not allege a misrepresentation or omission in connection with the sale of the Policy.

[41] *Homsey*, 496 F. Supp. 2d at 439, n. 1.

[42] *Benson v. Amguard Ins. Co.* 2017 WL 2672078 (D. Del. June 21, 2017) and *Price v. State Farm Mut. Auto, Ins. Co.*, 2013 WL 1213292 (Del. Super. Ct. Mar. 15, 2013), *aff'd* 77 A.3d 272 (Del. 2013).

[43] *Price*, 2013 WL 1213292 at *11.

[44] *Id.*

[45] *Christiana Care Health Servs, Inc. v. PMSLIC Ins. Co.*, 2015 WL 6675537 (D. Del. Nov. 2, 2015).

[46] *Id.* at *1.

[47] *Id.* at *7.

[48] *Id.*

[49] *Id.*

[50] *Benson*, 2017 WL 2672078 at * 1.

[51] *Id.* at *4.

[52] *Id.* at *4–*5.

[53] *Olga J. Nowak Irrevocable Trust v. Voya Fin., Inc*, 2020 WL 7181368 (Del. Super. Ct. Nov. 30, 2020).

[54] *Id.* at *2.

[55] *Id.* at *4.

[56] *Id.* at *8–*9.

[57] *Id.* at *9. In *Olga J. Nowak Irrevocable Trust* as well as in *Christiana Care* and *Benson*, the courts found no private right of action under the Act against insurance companies, relying on *Price*. In all three cases – *Olga J. Nowak Irrevocable Trust*, *Christiana Care*, and *Benson* – the courts went on to analyze claims under the Act even if a private right of action existed. There appears to be at least a question as to whether Ms. Williams can even bring a claim against Progressive under section 2513(a) of the Act. Progressive does not make this argument regarding the section 2513(a) claim and we will not address it.

[58] D.I. 11 ¶¶ 65–66.

[59] *Id.* ¶ 70.

[60] *Id.* ¶ 71.

[61] D.I. 11 ¶ 8, 22; D.I. 11–3 at 4–6.

[62] D.I. 11 ¶ 46, n.2

[63] *VLIW Tech.., LLC v. Hewlett-Packard Co*., 840 A.2d 606, 612 (Del. 2003).

[64] D.I. 11–2 at 19 (emphasis added).

[65] D.I. 11–2 at 23.

23

[66] *Id.*, Policy at 29.

[67] D.I. 31 at 29.

[68] D.I. ¶ 46.

[69] *Id.* At oral argument, Ms. Williams explained if the $488 is added back into the base value then the market value would be increased from $1,531.96 to $2,019.96 and, after backing out Ms. Williams's $2,000 deductible, she would have been entitled to approximately $20.

[70] *Smith v. S. Farm Bureau Cas. Ins. Co.*, 18 F.4 th 976 (8th Cir. 2021).

[71] *Id.* at 980.

[72] *Id.* (quoting the policy).

[73] *Id.* at 980–81.

[74] *Id.* at 981.

[75] D.I. 26, attaching *Brown v. Progressive Mountain Ins. Co.*, No. 21-175 (N.D.Ga. Aug. 15, 2022).

[76] D.I. 26 at 11.

[77] *Id.*

[78] D.I. 24 at 7.

[79] *Id.* Progressive also distinguishes *Smith* by characterizing the "crux" of the Court of Appeals' analysis as whether Mr. Smith stated a common law breach of contract separate from a claim based on Arkansas insurance regulations governing total loss valuations. Progressive argues the question here is the sufficiency of the allegations, an issue not before the Court of Appeals in *Smith*. It also argues the insurance policy in *Smith* did not expressly permit the use of third-party software to value a total loss claim as the Policy here. We are not persuaded by Progressive's arguments. The Court of Appeals examined substantially similar allegations as we have here and found them sufficient to state a claim for breach of contract based on the policy language. The policy provision permitting the use of third-party software is not particularly persuasive as we see the issue as whether, in applying the projected sold adjustment, Progressive did not determine the fair market value of Ms. Williams's car.

[80] D.I. 31 at 32–33.

[81] *Khushaim v. Tullow Inc.*, 2016 WL 3594752, at *3 (Del. Super. Ct. June 27, 2016) (citing *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 888 (Del. Ch.2009)).

[82] *Id.* at *4 (quoting *Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 441 (Del. 2005)).

24

[83] *Id.* (quoting *Allied Capital Corp. v. GC–Sun Holdings, L.P.*, 910 A.2d 1020, 1032–33 (Del. Ch. 2006)).

[84] *Philip A. Templeton, M.D., P.A. v. EmCare, Inc*., 868 F.Supp.2d 333, 340 (D. Del., 2012) (allowing breach of contract and breach of covenant of good faith and fair dealing to go forward at motion to dismiss stage).

[85] D.I. ¶ 92.

[86] *Yaw v. Delaware River Basin Comm'n*, --- F. 4th ---, 2022 WL 4283534, at *10 (3d Cir. Sept. 16, 2022).

[87] *Id.* (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC)*, 528 U.S. 167, 185 (2000)) (emphasis in original).

[88] *Id.* (citing *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 210–11 (1995)).

[89] *Id.* (citation omitted) (emphasis in original). *See also, Benson*, 2017 WL 2672078 at *3–*4. In *Benson*, Judge Stark dismissed Mr. Benson's claim for declaratory relief regarding the timeliness, fairness, and reasonableness of the insurer's handling of his workers' compensation claim, finding it sought adjudication of past conduct and "lacks utility." *Id.* at *4.

[90] D.I. 22 at 18.

[91] D.I. 11 ¶ 92.

[92] *See e.g.*, *Ford v. Progressive Specialty Ins. Co.*, --- F. Supp. 3d ---, No. 21-4147, 2022 WL 612722, at *6–*7 (E.D.Pa. Mar. 2, 2022) (dismissing declaratory judgment claim as duplicative of breach of contract claim in putative class action brought by plaintiff seeking a declaration his and class members' claims against their insurer are not barred by a stacking waiver or household vehicle exclusion because such a declaration would entitle plaintiff and class members to underinsured motorist benefits which "would directly impact, if not resolve, the breach of contract claim.").